**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| DISH NETWORK L.L.C., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MOHAMMAD ATTYAH, individually and )<br>d/b/a Tarboosh TV, )<br>)<br>Defendant. )<br>) | Case No. |

**COMPLAINT**

Plaintiff DISH Network L.L.C. ("DISH") brings this suit against Defendant Mohammad Attyah, individually and d/b/a Tarboosh TV ("Defendant"), and states as follows:

**Nature of the Action**

1.  DISH brings this suit for direct and contributory copyright infringement because, Defendant is taking broadcasts of television channels exclusively licensed to DISH and is unlawfully retransmitting these channels over the Internet throughout the United States on Defendant's Tarboosh service (the "Tarboosh Service") to customers who purchase Defendant's Tarboosh TV set-top boxes, smart TV subscriptions, apps, and account renewals. Defendant knows that the Tarboosh Service is providing access to television channels exclusively licensed to DISH and, at the very least, Defendant is materially contributing to and inducing direct copyright infringement by an unknown third party.

2.  Defendant demonstrated the willfulness of his infringement by (i) continuing to sell and promote the Tarboosh Service in the United States despite multiple demands from DISH that he cease, (ii) unsuccessfully seeking to acquire licenses to transmit the channels exclusively licensed to DISH, and (iii) falsely claiming that he had ceased selling the Tarboosh Service in the United States.

## Parties

3. Plaintiff DISH Network L.L.C. is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

4. Defendant Mohammad Attyah is a natural person residing at 43459 Interval Street, Chantilly, Virginia 20152.

## Jurisdiction and Venue

5. DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

6. Defendant resides in and conducts business in the State of Virginia, and therefore, Defendant is subject to this Court's personal jurisdiction.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district, under § 1391(b)(2) because a substantial part of the events causing DISH's claims occurred in this district, and under § 1391(b)(3) because Defendant is subject to personal jurisdiction in this district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

## DISH's Copyrights

8. DISH is the fourth largest pay-television provider in the United States providing copyrighted programming to millions of subscribers nationwide with satellite delivery under the "DISH" brand and through over-the-top ("OTT") services under the "Sling TV" brand whereby programming is delivered using a public Internet infrastructure. Through its satellite and Sling TV services, DISH is one of the largest providers of international television channels in the United States offering more than 400 channels in 27 different languages.

9.     DISH contracts for and licenses rights for the international channels distributed on its platform from channel owners and their agents, including Al Jazeera Media Network; MBC FZ LLC; International Media Distribution (Luxembourg) S.A.R.L.; B4U U.S., Inc.; Bennet, Coleman and Company Limited; GEO USA LLC; Hum Network Limited; Companhia Rio Bonito Comunicações; MSM Asia Limited, Soundview ATN LLC; Soundview Broadcasting LLC; TV Today Network Ltd.; Vedic Broadcasting Inc.; and World Span Media Consulting, Inc. (collectively, the "Networks").

10.    The Networks' channels include Aastha; Aastha Bhajan; Al Arabiya; Al Hayah 1; Al Jazeera Arabic News; Al Jazeera Mubasher; ART Movies; ATN Bangla; ATN News; B4U Music; Band News; CBC, CBC Drama, Future TV; Geo TV, Hekayat; Hum Sitaray; India Today; Iqraa; LBC; LDC; MBC1; MBC Drama; MBC Kids (a/k/a MBC3); MBC Masr; Melody Classic; Murr TV (a/k/a MTV Lebanon); NBN; New TV (a/k/a Al Jadeed); Noursat; OTV; SAB, SET MAX, Sony SET, Sony MIX, and Zoom (collectively, the "Protected Channels"). The Networks acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment.

11.    DISH entered into signed, written licensing agreements with the Networks granting DISH the exclusive right to distribute and publicly perform the Protected Channels and works that air on the Protected Channels in the United States by means including satellite, OTT, Internet protocol television ("IPTV"), and Internet. DISH's exclusive rights were in effect at all relevant times and are currently in effect. Thirty-one or more works that aired on the Protected Channels and for which DISH holds exclusive distribution and public performance rights are registered or have registrations pending with the United States Copyright Office. (*See* Exhibit 1.) A vast number

of additional, unregistered copyrighted works in which DISH holds exclusive distribution and public performance rights also aired on the Protected Channels. (*See* Exhibit 2.)

12. Defendant is not authorized by DISH to transmit, distribute, or publicly perform the Protected Channels or works that air on those channels in the United States, and DISH has received no compensation from Defendant to do so.

### Defendant's Wrongful Conduct

13. Defendant distributes, sells, and promotes the Tarboosh Service to consumers in the United States ("Service Users").

14. Defendant promotes the Tarboosh Service on his website *www.tarbooshtv.com*. ("Tarbooshtv.com"), as being able to "Unlock a new world of entertainment" with "4000+ Live HD Channels in 25 Languages." Defendant targets Service Users by offering "Free Delivery Worldwide" and represents that it "Works in Any Country."



15. Defendant also promoted the Tarboosh Service on Tarbooshtv.com as a device with "loaded premium content" including "4000+ Live TV channels in 25 languages."

4

> A smart device that changes the TV watching experience **with the loaded premium content**
> - **4000+ Live TV channels in 25 languages**
> - 5000+ Movies in 6 languages
> - 100+ Series
> - 20+ Smart apps

16. Defendant specifically identifies the "4000+ Live HD Channels" and "loaded premium content" with a "Channels List" link on Tarbooshtv.com that directs consumers to a list of available channels on the Tarboosh Service, including the Protected Channels. (*See* Exhibit 3.)

17. Defendant boasts on Tarbooshtv.com that, "[e]ach device comes packed with 4,000+ live TV channels, meaning, whatever you and your family (and extended family) feel like watching, we've got you covered."

18. Any member of the public with Internet access, including Service Users, can receive the Protected Channels from Defendant by simply purchasing a Tarboosh TV set-top box, smart TV subscription, or app; powering on the device or opening the app; and selecting the Protected Channels.

19. Defendant sells his Tarboosh TV set-top box on Tarbooshtv.com and Ebay for $75 to $375, with a three month to five year subscription for accessing the channels. Defendant also sells his smart TV subscriptions and apps on Tarbooshtv.com for $11.99 to $79.99, with a one month to one year subscription for accessing the channels.

20. Service Users who want to continue to receive the channels after the initial subscription period must purchase an "Account Renewal" from Defendant. Defendant sells these Account Renewals on Tarbooshtv.com for $29.99 to $259.99, depending on the additional term from three months to five years.

### A. Defendant Selects, Controls, and Transmits the Protected Channels to Service Users.

21. Defendant uses his Tarboosh Service to transmit the Protected Channels over the Internet to Service Users soon after the original authorized transmission. Upon information and belief, Defendant captures live broadcast signals of the Protected Channels, transcodes these signals into a format useful for streaming over the Internet, transfers the transcoded content to one or more servers provided, controlled, and maintained by Defendant, and then transmits the Protected Channels to Service Users through OTT delivery.

22. Tarbooshtv.com includes Defendant's "Terms & Conditions" conceding that he transmits and controls the channels on the Tarboosh Service as a "service transporter" that "may add or remove any service," and the "service can be changed (Add / Remove) channels according to the laws of broadcasting." Defendant "does not guarantee nor claim[] any rights to the content" on the Tarboosh Service.

23. Defendant communicates with Service Users through posts on his Facebook page located at https://www.facebook.com/Tarboosh-TV-2338093806203033/. For example, one of Defendant's Facebook posts indicates he selects channels with high demand and has control over the channels on the Tarboosh Service.


**MO F Hassan** why you do not have a Swedish channel. Ex Viasatsport
Like · Reply · 1d


**Tarboosh TV** MO F Hassan hello. There is no high demand, you can contact us via email to check if we can add them
Like · Reply · 1d

24. Another Facebook post by Defendant confirms that he "added" the MBC Iraq channel to the Tarboosh Service in response to a request from a Service User living in Madison, Wisconsin.



B. **Defendant has a Long History of Willful Copyright Infringement.**

25. Defendant has actual knowledge that the transmission of the Protected Channels on the Tarboosh Service infringes DISH's copyrights. DISH and Networks sent at least fifty-four (54) notices of infringement between June 30, 2016 and the filing of this Complaint, demanding that Defendant cease transmitting the Protected Channels identified in the notices, or otherwise cease distributing, selling, and promoting the Tarboosh Service in the United States.

26. Defendant responded to these notices of infringement on several occasions falsely claiming he had ceased selling the Tarboosh Service in the United States. For example, in September 2016 Defendant responded, "[a]s we discussed before, we blocked our website in USA, so there will be no sales within the US from our website anymore."

7

27. DISH's investigator located in the United States purchased a Tarboosh TV set-top box from Defendant on Tarbooshtv.com in September 2016, following Defendant's claim that he had ceased selling in the United States.

28. In October 2016, Defendant again responded, "we are not selling this product anymore and stopped selling it once we were notified about the Copyright Infringement."

29. DISH's investigator located in the United States purchased another Tarboosh TV set-top box from Defendant on Tarbooshtv.com during December 2018.

30. On January 22, 2019, Defendant again claimed that he "has now left the US market."

31. Defendant then made a post on his Facebook page on January 27, 2019, confirming that he would provide free delivery via United States mail to a Service User residing in New Jersey.

32. Defendant also made a post on his Facebook page on February 16, 2019, confirming that he would provide free delivery to a Service User residing in Texas.

33. Defendant is also continuing to promote and offer the Tarboosh Service for sale to Service Users on Tarbooshtv.com with statements including "Free Delivery Worldwide" and "Works in Any Country," a shopping cart allowing purchases to be made and shipped to United States addresses, and a "Buy it from Ebay" link to Defendant's Ebay listings for the Tarboosh TV set-top box.

34. One of Defendant's Ebay listings is titled "4300 HD Channels IPTV Box All Languages TV Channels 2 Years Free TV" and it similarly promotes and offers the Tarboosh TV set-top box for sale to Service Users with statements including "Free Shipping World Wide," "Ships to: Worldwide," and "No Matter What Language You Speak, We Got Your Channels" above an image of a person standing over the United States.

35. Defendant has also made several inquiries about obtaining licenses from DISH to "rebroadcast" the Protected Channels and asked whether DISH has "ever licensed a rebroadcaster?"

36. However, DISH does not sub-license the Protected Channels or the works that air on the Protected Channels to other content distributors. Rather, the value to DISH lies in having the exclusive rights to distribute and publicly perform the works airing on the Protected Channels, which in turn enables DISH to attract new subscribers and retain existing subscribers for its own satellite and OTT platforms.

37. DISH and Networks sent at least eleven additional notices requesting the removal of the Protected Channels to content delivery networks ("CDNs") associated with the Tarboosh Service from May 23, 2018 to the filing of this Complaint. Upon information and belief, at least some of these notices were forwarded to Defendant. Even when these CDNs removed the unauthorized content based on Defendant's copyright infringement, Defendant intentionally interfered with the takedown efforts by, for example, transmitting the Protected Channels from different CDNs or locations.

## CLAIMS FOR RELIEF

### Count I

**Direct Copyright Infringement Under 17 U.S.C. § 501**

38. DISH repeats and realleges the allegations in paragraphs 1-37.

39. DISH is a copyright owner under 17 U.S.C. § 106 because DISH holds the exclusive rights to distribute and publicly perform in the United States, by means including satellite, OTT, IPTV, and Internet, the programs that make up the Protected Channels.

40. The programs that make up the Protected Channels are original audiovisual works fixed in a tangible medium of expression, and are therefore copyrightable subject matter. DISH's

copyrights in programs that aired on the Protected Channels arise under laws of nations other than the United States that are parties to copyright treaties with the United States, including the United Arab Emirates, Qatar, Egypt, Lebanon, Pakistan, India, Bangladesh, and Brazil, where the programs were authored and first published. Under 17 U.S.C. §§ 101, 411, the programs that make up the Protected Channels are non-United States works and, therefore, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works.

41. Defendant directly infringes DISH's copyrights in violation of 17 U.S.C. § 501 by distributing and publicly performing programs that make up the Protected Channels to Service Users, including the works identified in Exhibits 1-2. Upon information and belief, the copyrighted programs were transmitted from computer servers controlled by Defendant to Service Users who accessed the programs using the Tarboosh Service.

42. DISH has not authorized Defendant to distribute or publicly perform the programs that make up the Protected Channels in any manner.

43. The infringement of DISH's rights in each program constitutes a separate and distinct act of copyright infringement.

44. Defendant's actions are willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

45. Unless enjoined by the Court, Defendant will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## Count II

**Inducing and Materially Contributing to Copyright Infringement Under 17 U.S.C. § 501**

46. DISH repeats and realleges the allegations in paragraphs 1-37 and 39-40.

47. DISH's exclusive rights to distribute and publicly perform the Protected Channels and programs that make up the Protected Channels are directly infringed by the unauthorized transmission of these programs to Service Users who access the programs using Defendant's Tarboosh Service.

48. Defendant materially contributes to this infringement of DISH's exclusive distribution and public performance rights by, among other things, providing Service Users access to the Protected Channels and the programs that make up the Protected Channels, despite having the ability to prevent such access. Defendant also induces the infringement of DISH's exclusive distribution and public performance rights by, among other things, creating the audience for that infringement in the United States.

49. Defendant sells the Tarboosh Service in the United States providing Service Users access to unauthorized streams of the Protected Channels and the programs that make up the Protected Channels. Service users simply power on the device or open the app and select the Protected Channels.

50. Defendant advertises the Tarboosh Service as a means of accessing the Protected Channels. The "Channels List" link on Tarbooshtv.com directs consumers to a list of available channels on the Tarboosh Service, including the Protected Channels.

51. Defendant provides material assistance to those directly infringing DISH's exclusive rights by providing the Tarboosh Service for the Protected Channels to be viewed. The Protected Channels are presented to Service Users through the Tarboosh Service.

52. Defendant intends that the Tarboosh Service be used to access the Protected Channels and the programs that make up the Protected Channels, and he promotes, encourages, and facilitates using the Tarboosh Service in this manner.

53. Defendant has actual knowledge that the transmission of the Protected Channels and the programs that make up the Protected Channels to Service Users infringes DISH's exclusive distribution and public performance rights.

54. Defendant can take simple measures to prevent further infringement of DISH's exclusive rights to distribute and publicly perform the programs that make up the Protected Channels, such as removing the Protected Channels from the Tarboosh Service, blocking the Tarboosh Service from accessing servers and URLs that are identified to be streaming the Protected Channels, ceasing to buy further devices and services until the Protected Channels are removed from the Tarboosh Service, and ceasing to sell the Tarboosh Service in the United States.

55. Defendant's actions are willful, malicious, intentional, and purposeful, and in disregard of and with indifference to the rights of DISH.

56. Unless enjoined by the Court, Defendant will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, DISH prays for judgment against Defendant as follows:

A. For a grant of permanent injunctive relief under 17 U.S.C. § 502 restraining and enjoining Defendant, and any of his agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order (including, without limitation, distributors and retailers of the Tarboosh Service), from:

1. transmitting, streaming, distributing, or publicly performing in the United States, with any Tarboosh TV set-top box, smart TV subscription, app, account renewal, or any other device, application, service, or process, any of the Protected Channels or any of the programming that comprises any of the Protected Channels;

2. distributing, selling, providing, or promoting any product or service in the United States, including any Tarboosh TV set-top box, smart TV subscription, app, or account renewal, that comprises the whole or part of a network or service for the distribution or public performance of any of the Protected Channels or any of the programming that comprises any of the Protected Channels;

3. advertising, displaying, or marketing any Tarboosh TV set-top box, smart TV subscription, app, account renewal, or service in connection with the Protected Channels or the programming that comprises the Protected Channels; and

4. inducing or contributing to others' conduct that falls within 1, 2, or 3 above.

B. For the thirty-one or more registered works, statutory damages as awarded by the Court up to $150,000 per registered work infringed under 17 U.S.C. § 504(c), or the Defendant's profits attributable to the infringement of those registered works under 17 U.S.C. § 504(b).

C. For unregistered works, an award of Defendant's profits attributable to the infringement of each unregistered work under 17 U.S.C. § 504(b).

D. For DISH's attorneys' fees and costs under 17 U.S.C. § 505.

E. For impoundment and disposition of all infringing articles under 17 U.S.C. § 503.

F. For pre- and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law.

G. For such additional relief as the Court deems just and equitable.

Dated:  May 3, 2019	Respectfully submitted,

      /s/*Bradshaw Rost*
Bradshaw Rost, Esq., VSB Bar #27134
**Tenenbaum & Saas, P.C.**
4504 Walsh Street, Suite 200
Chevy Chase, MD 20815
(301) 961-5300 – Tel
(301) 961-5395 – Fax
brost@tspclaw.com

Stephen M. Ferguson, Esq. (*pro hac vice* to be filed)
**Hagan Noll & Boyle, LLC**
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX 77024
(713) 343-0478 – Tel
(713) 758-0146 – Fax
stephen.ferguson@hnbllc.com

*Attorneys for Plaintiff DISH Network L.L.C.*